UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
17-CV-1882 (RHK/HB)

_____

Christine Mensen,

       Plaintiff,

v.

Monterey Financial Services, LLC
d/b/a Monterey Collection Service,

       Defendant.

**PLAINTIFF'S MEMORANDUM OPPOSING DISMISSAL**

_____

      When a creditor pretends to be a debt collector, the Fair Debt Collection Practices Act (FDCPA) regulates it as if it were, in fact, a debt collector. 15 U.S.C. § 1692a(6). Though nominally a creditor, Defendant Monterey Financial Services, LLC d/b/a Monterey Collection Service ("MFS") went to elaborate lengths to portray itself as a debt collector to Plaintiff Christine Mensen. The Court must deny its attempt here to elude FDCPA liability.[1]

## FACTS

      Ms. Mensen adopted a bulldog with financing from Wags Lending, LLC, which leased the dog to her on August 29, 2015 at 72% APR. Compl. ¶ 8. Three days later, before Ms. Mensen's first payment came due, Wags Lending assigned the loan to MFS for servicing. *Id.* at ¶ 10. Upon assignment, MFS began routinely reporting the status of Ms. Mensen's loan to the credit bureau Trans Union, LLC using its company name, "Monterey Financial Services." *Id.* at ¶ 11. MFS reported it as an "unsecured installment loan" with account number 30245. *Id.* at ¶ 12.

---

[1] In its motion, MFS does not suggest that it did not violate the FDCPA by reporting Ms. Mensen's debt on her credit report as owed despite its discharge in bankruptcy, only that it is not subject to the FDCPA at all. Ms. Mensen thus does not address the merits of this claim in her memorandum.

When Ms. Mensen fell behind on her payments in January 2016, however, MFS stopped reporting its "Monterey Financial Services" account and began reporting under a second "collection agency" account to Trans Union under the alias "Monterey Collection Service." *Id*. at ¶ 13. MFS categorized this account as "in collection," and noted that it had been "placed for collection" in February 2016. *Id*. at ¶ 14. MFS also reported the "Monterey Collection Service" debt under a different account number (50266) than it had used with the account bearing its own name. *Id*.

Ms. Mensen discharged MFS's debt in a Chapter 7 bankruptcy filed on June 16, 2016. *Id*. at ¶¶ 15-18. However, MFS continued to report the "Monterey Collection Service" collection account on Ms. Mensen's Trans Union credit report as being open with a $10,637 past due balance. *Id*. at ¶ 19. Ms. Mensen disputed this inaccuracy through the process established by the Fair Credit Reporting Act, 11 U.S.C. § 1681. *Id*. at ¶ 20. MFS failed to correct the account, and continues to falsely report the debt as past due rather than discharged. *Id*. at ¶ 21-22.

Ms. Mensen filed the present action against MFS for misrepresenting the "character, amount, and legal status" of the debt under the name "Monterey Collection Service" in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A).

**LEGAL STANDARD**

FRCP 8(a)(2) requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard and survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted).

This is not a "probability requirement." *Id*. Instead, a "plaintiff need only allege facts that permit the reasonable inference that the defendant is liable," even if it "strikes a savvy judge that

actual proof of the facts alleged is improbable." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (*quoting Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). The Court must construe the complaint liberally and draw all reasonable inferences in the plaintiff's favor. *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).

## ARGUMENT

1. **The FDCPA classifies creditors as "debt collectors" when they use a name other than their own to imply that a third party is collecting their debt.**

Creditors are generally not subject to the FDCPA.[2] Yet the Act makes an exception for a creditor who "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). "Because alleged debtors are more apt to pay attention to the demands of a party other than the creditor . . . Section 1692a(6) closes a potential loophole that would otherwise allow creditors to improperly suggest that an independent debt collector has entered the picture." *Hartley v. Suburban Radiology Consultants, Ltd.*, 11-CV-2664 (JRT/JJG) (D. Minn. 2013) (internal citations omitted). "This exception was enacted to recognize that the seriousness of one's debts increases once the original creditor turns the debt over to a third party for collection. Congress believed that in giving the appearance that a third party is collecting the debt, it can be assumed that the creditor is attempting to create more pressure on the debtor to pay his or her debt." *Pippert v. Niece*, 518 F. Supp. 2d 1265, 1269-70 (D. Oregon, 2007). To brighten this line, the FTC has ruled that a creditor's in-house collection department must be "clearly labeled as being from the 'collection unit of the (creditor's name)'" if it wishes to operate without FDCPA regulation. FTC Official Staff Commentary § 803(6)-3.

---

[2] "It is well settled law throughout the Circuits that the FDCPA does not apply to a party who acquires a debt that was current (i.e. not in default) at the time it was obtained." Def.'s Memo. at 3 [Doc. 13].

Courts must ask whether a creditor's alias "would indicate that a third person is collecting or attempting to collect" from the view of the "unsophisticated consumer."[3] *Strand v. Diversified Collection Service*, 380 F. 3d 316, 317 (8th Cir. 2004).

Under this standard, this Court has held that creditors invite FDCPA regulation by even *implying* the involvement of a third party:

> "[L]iability can be imposed upon creditors not only where the creditor uses aliases or pseudonyms but also where the creditor merely implies that a third party is collecting a debt when in fact it is the creditor that is attempting to do so. The Court adopts this approach because it recognizes that an overly strict distinction between creditors and debt collectors undermines the remedial purposes of the Act, and elevates the form of a creditor's interaction with its debtors over its substance."

*Hartley*, 11-CV-2664 (JRT/JJG) (internal citations omitted) (*see also Maguire v. Citicorp Retail Services, Inc.,* 147 F. 3d 232, 235 (2d Cir. 1998), "[a] creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else or uses a pseudonym or alias.").

Other Circuits agree. The 7th Circuit, for example, classified Cendant Timeshare Resort Group as a debt collector because it used the alias "CTRG — Consumer Finance:"

> "Maybe a sophisticated person could have guessed that 'CTRG' is an acronym for 'Cendant Timeshare Resort Group.' The Act does not require, however, either sophistication or guesswork. Courts must analyze debt-collection communications from the perspective of unsophisticated recipients . . . [Plaintiff]'s situation likewise is governed by the norm that unsophisticated readers do not see through acronyms when the creditor's full name is missing. Even when that norm does not apply — for some acronyms, such as AT&T and IBM, are so famous that even an unsophisticated consumer must appreciate the source, *see Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir.2004), a letter from an acronym that is self-proclaimed not to be the creditor must be treated as one from a 'debt collector.' Cendant's letter stated that it was from a debt collector rather than the creditor (identified as Fairfield Communities). Having trumpeted

---

[3] "A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder. This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Strand v. Diversified Collection Service*, 380 F. 3d 316, 317-8 (8th Cir. 2004) (internal citations omitted).

> Resort Financial Services as a debt collector, Cendant had to comply with all obligations that the Act places on debt collectors."

*Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F. 3d 780, 782 (7th Cir. 2006). The 7th Circuit's decision squares with the FTC ruling that "[a] creditor is a debt collector for purposes of this act if the creditor's collection division . . . is not clearly designated as being affiliated with the creditor." FTC Official Staff Commentary § 803(6)-3.

Similarly, the 2nd Circuit applied the FDCPA to Citicorp when it used the name "Debtor Assistance:"

> "[W]e can not find as a matter of law that a least sophisticated consumer would have known that the Debtor Assistance letter was from Citicorp. The letter Maguire received bore the letterhead 'Debtor Assistance' creating the impression that a third party, Debtor Assistance, was collecting its debts. Citicorp had not consistently used the name Debtor Assistance from the beginning of the credit relationship so that the plaintiff could have known 'at all times that [she was] dealing with the same entity.' *Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F.Supp. 1122, 1127 n. 5 (S.D.W.Va.1990). (no FDCPA liability because store used same name from the beginning of the credit relationship). To the contrary, plaintiff had never received correspondence from Debtor Assistance, nor has she ever been contacted by someone from Debtor Assistance."

*Maguire v. Citicorp Retail Services, Inc.,* 147 F. 3d 232, 236 (2d Cir. 1998). The Court here emphasized that Citicorp invited confusion because it had never used the name "Debtor Assistance" with the plaintiff before. *Id*.

   2. **MFS "use[d] a name other than its own" that implied a third party was collecting its debt.**

It is a fact that MFS "use[d] any name other than [its] own" by reporting Ms. Mensen's debt on her credit report under the name "Monterey Collection Service." 15 U.S.C. § 1692a(6). "Monterey Collection Service" is not MFS's registered business name or a registered assumed name in either Minnesota or in its home state of California. Nor had it ever used this name with Ms. Mensen before. Its alias also violates the FTC rule that in-house collection departments must

be "clearly labeled as being from the 'collection unit of the (creditor's name).'" FTC Official Staff Commentary § 803(6)-3. This alone subjects it to FDCPA liability under § 1692a(6).

And while it takes little imagination to infer that MFS deliberately chose the alias "Monterey Collection Service" to create the illusion the account had been assigned to a debt collector, thus increasing the perceived severity of its delinquency, what matters its not MFS's intentions but how its actions look to an unsophisticated consumer. Its appearance to such a consumer is clear in light of the supporting facts Ms. Mensen alleges in her Complaint: that MFS reported her debt as a separate account "in collection" under a false name when she fell into default, that it classified itself as a "collection agency" to Trans Union, and that it began using a different account number when doing so. Under these circumstances, even a financially literate consumer could be forgiven for believing "Monterey Collection Service" to be a third-party collector. An unsophisticated consumer would certainly be fooled. By portraying itself to be third party, MFS has invited categorization as a "debt collector" under 1692a(6).

3. **An unsophisticated consumer would not assume "Monterey Collection Service" to be the same company as "Monterey Financial Services."**

Notwithstanding the above, courts will not subject creditors to FDCPA liability when it is clear the creditor is collecting its own debts. For example, this Court rejected a plaintiff's FDCPA suit against Tenet Healthcare Corporation because Tenet properly identified itself to the plaintiff as "Tenet's collection department," and used its own logo on its correspondences:

> "Tenet is not a 'debt collector' under the 'false name' exception. Here, Plaintiffs allege in the Complaint that CFC representatives told Plaintiffs' attorney that it was 'Tenet's collection department.' Further, CFC representatives told Kos that CFC was 'closely affiliated' with Tenet. Moreover, CFC required Kos to complete an authorization titled, 'Tenet Healthcare Corporation . . . Authorization to Use and Disclose Protected Health Information,' before CFC would speak with Kos's attorneys about the charges. A CFC representative also faxed an offer to reduce the remaining charges and the fax cover sheet contained the Tenet logo. Based on these allegations, a consumer would not be deceived

into believing that CFC was an unrelated third party from Tenet under the least sophisticated consumer standard."

*Medica Self-Insured v. Tenet Healthcare Corporation*, 06-CV-47457 (DWF/AJB) *7-8 (D. Minn. 2007).

Nor is a creditor considered a "debt collector" when collecting as its plainly-labeled corporate affiliate, as when "Bank of America" collects as "Bank of America Home Mortgage:"

"Nor is Bank of America a creditor under the FDCPA merely because [it] utilized a corporate affiliate [i.e., Bank of America Mortgage] to collect its debt . . . . The record dispel[s] any notion that [Bank of America Mortgage] might be a distinct third-party collection agency. Even the least sophisticated consumer... would be able to determine from cursory review of the correspondence from Bank of America Mortgage to Plaintiffs that [Bank of America Mortgage] is ... related to [Bank of America]. (Tobolski Decl. ¶ 14 & Ex. D (correspondence prominently displayed both Bank of America's corporate logo and the legend: 'Bank of America Mortgage is a division of Bank of America, N.A.') The relatedness of the two entities would [also] be apparent from the similarity of the creditor's [Bank of America] and its affiliate's [Bank of America Mortgage] name."

*Burns v. Bank of America*, 655 F. Supp. 2d 240, 254 (SDNY 2008) (internal citations omitted). Like Tenet *supra*, Bank of America clearly indicated that its department doing the collection was "a division of Bank of America, N.A." as required by the FTC. Official Staff Commentary § 803(6)-3.

MFS may argue that— despite employing an unregistered alias unknown to Ms. Mensen, opening a new credit report account, using a different account number, and adopting the label "collection agency" at the moment Ms. Mensen fell into default— an unsophisticated consumer would naturally recognize "Monterey Collection Service" to be Monterey Financial Services, LLC under a different name because of the shared word "Monterey." Some brands, the rationale goes, have a name "so famous that even an unsophisticated consumer must appreciate the source," *Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F. 3d 780, 782 (7th Cir. 2006), as in *Burns*. 655 F. Supp. 2d at 254 (*see also Chiang v. Verizon New*

*England Inc.*, 2009 WL 102707, *7 (D. Mass. Jan. 13, 2009) "[a] least sophisticated consumer, exercising even a modicum of reasonableness, would not conclude that 'Verizon Massachusetts' was a third party debt collection agency completely unrelated to 'Verizon' or 'Verizon New England, Inc.'").

This principle simply does not apply to MFS. It is neither conventionally known nor evident from MFS's credit reporting that it and "Monterey Collection Service" were the same organization. Though both use the name Monterey, this does not inherently link them as the same company, as it does with nationally-recognized corporations like Bank of America, Verizon, or IBM when they use variations of their name. *See supra.* The name "Monterey" instead suggests that both companies are connected to the well-known city of Monterey, California (or even the lesser-known Monterey, Minnesota). To wit, the California Secretary of State has 3,479 registered businesses with the name "Monterey," including several collectors: "Monterey Collection, Inc.," "Monterey Bay Collection Agency," "The Monterey Collection Community Corporation," and so on. Even Minnesota has more than a dozen registered corporations named "Monterey," presumably few of which are corporate affiliates.

An unsophisticated consumer could certainly draw *some* connection between "Monterey Collection Service" and MFS. Perhaps the two are collecting the same underlying debt, or are both located in Monterey, California. But they would see no evidence that two were the same company. Certainly MFS did not disabuse Ms. Mensen of this illusion, going instead to elaborate lengths to represent itself as a third party on her credit report. It thus cannot claim this exception, and must comply with the FDCPA.

**CONCLUSION**

MFS used an unregistered alias—any many other tricks besides—to portray itself as a third party on Ms. Mensen's credit report. After refusing to correct false information it reported about Ms. Mensen under its alias, MFS now demands dismissal of her FDCPA action on the lone ground that "the FDCPA only applies to . . . debt collectors." Def.'s Memo. at 2. The FDCPA, however, also regulates creditors "who use[ ] any name other than [their] own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). This section of the statute directly anticipates trickery of the kind MFS engaged in here, and addresses it by subjecting the creditor to FDCPA liability. The Court must rightfully deny MFS's motion.

Respectfully submitted,

Date: August 4, 2017

*/s/ Bennett Hartz*
Andrew C. Walker #392525
Bennett Hartz #393136
Walker & Walker Law Offices, PLLC
4356 Nicollet Avenue South
Minneapolis, MN 55409
(612) 824-4357
***Attorneys for Consumer***